Okey, J.
Was tbe order of June 2, 1865, final? A judgment rendered or final order made by the district court maybe reversed, vacated, or modified by the supreme court for errors appearing on the record. Civil Code of 1853, § 514; Rev. Stat. § 6710. The code also provides (§ 512) that “ an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment,. ... is a final order which may be vacated, reversed, or modified.” And see Rev* Stat. § 6707.
The object of the suit was the foreclosure of a mortgage given by the canal company. An order of sale had been entered in the district court. The railroad company, which had been admitted as a defendant, claimed, by answer and cross-petition, that subsequently to the entry of the order of sale, it had, under authority of law, appropriated the property mortgaged for its track. Other creditors, by answers and cross-petitions, sought to foreclose another mortgage given by the canal company on the same property, and also to impeach the appropriation of the property for fraud.
The substance of the finding and order of 1865, in this posture of the case, was that the appropriation of the bed of the canal by the railroad company was complete; that all right to obtain a sale of the mortgaged property was barred by the appropriation; that the lien which remained to the creditors was not a lion upon the property described in the mortgages, but on the amount ($55,000) paid therefor by the railroad company, and then in the hands of the receiver; and that the appropriation proceeding could not be impeached in that suit, for the reason that this would be an exercise, by the district court, of original and not appellant jurisdiction. Accordingly, the answers and cross-petitions were dismissed, so far as the creditors sought therein to impeach the appropriation for fraud, and there *315 was left to those creditors only the right to pursue any lien they might have on the above-mentioned fund in the hands of the receiver, and a further right to impeach, in an independent suit, the appropriation proceeding for fraud.
Other, and in some respects conflicting, views as to this order have been suggested. It has been thought that the order of dismissal was void. But the court had jurisdiction of the parties and subject-matter. It has been suggested that the sum in the hands of the receiver ($55,000) represented the equity of redemption. But if so, why did the court refuse to enter an order of foreclosure on the answers and cross-petitions ? And finally, it is suggested that the right of foreclosure in an independent suit was reserved by the order of 1865. But, in effect, this would nullify the order remitting those creditors to their lien on the fund. "We are satisfied that neither of these positions is tenable; and that the order was an extinguishment of all right in the parties before the court, in fact or by representation, to obtain a sale of the mortgaged property in that or any other suit. Of course, if there be creditors who can not be regarded as having been before the court, the order can not affect them.
This order effectually disposed of a material part of the case. That is rendered certain by reference to the orders of 1870 and 1871. Indeed, as was then apparent from the master’s report on file, the order of 1865 virtually denied, to the parties now complaining, all relief in the cause. Such an order was necessarily final and not interlocutory. Teaff v. Hewitt, 1 Ohio St. 520; Fuller v. Clafflin, 93 U. S. 14. And see Brigel v. Starbuck, 34 Ohio St. 280.
Nor is it different as to the claim of Mary Burke, administratrix of Alexis Burke. The parties were very numerous, and aside from the provision in the mortgages allowing one to prosecute for the others, the statute, which accords with the rule in equity, provides that “where the question is one of a common or general interest of many persons, or when the parties are very numerous, and it may be impracticable to bring them all before the court *316 one or more may sue or defend for the benefit of all.” Civil Code, § 37; Rev. Stat. § 5008. And no doubt a judgment or order in such case is binding on all persons standing in the like predicament; but the court will take “ care that sufficient persons are before it honestly, fairly, and fully to ascertain and try the general right in contest.” Story’s Eq. PI. § 120. It appears, however, from the record, that Burke appeared before the master, in pursuance of the decree of 1861, and proved his claim; and, besides, his administratrix was made a party in the cause in 1870.
The civil code (§ 523) limited proceedings in error to three years after the rendition of the judgment or making the final order sought to be reversed. As three years had elapsed from the time the order of 1865 was made — indeed, from the making of the order of 1870 — before the petition in error was filed in this court, the proceeding in error must be dismissed for that cause.
We come, then, to the consideration of the question involved in the case of Mary Burke,administratrix, and others against the railroad company and others. The question there is, whether the action is barred by the limitation of four years. The civil code provided -(§§ 12, 15) as follows: “ Civil actions, other than for the recovery of real property, can only be brought within the following periods after the cause of action shall have accrued. . . . Within four-years : . . . (1.) An action for injury to the rights of the plaintiff, not arising on contract, and not hereinafter-enumerated. (2.) An action for relief on the ground of fraud. The cause of action in such case shall not be deemed to have accrued until the discovery of the fraud.” (R. S., § 4982). These sections extended to cases of an equitable as well as those of a legal nature. Howk v. Minnick, 19 Ohio St. 462; Combs v. Watson, 32 Ohio St. 228 ; Loffland v. Bush, 26 Ohio St. 559. And see Longworth v. Hunt, 11 Ohio St. 194.
On careful consideration of this anomalous petition, we are led to the conclusion that all it contains with respect to the mortgages is stated by way of inducement, and that *317 the gravamen is the alleged fraud whereby it is said the plaintiffs were deprived of their interest in the property.
Doubtless a mortgagee could maintain an action at law for injury to his rights. Thus, in Allison v. McCune, 15 Ohio, 726, this court held that a special action on the case lies against one who lessens a mortgage security, and damages may be recovered to the extent of any actual injury sustained by such act, although the mortgagee was not in possession. There the injury was the destruction of a mill on the premises mortgaged. I am not prepared to say how far the principle of this class of cases extends; nor is it material. Plainly such an action would be barred in four years, and the statute would begin to run at the time of the injury.
But it is claimed that here is a trust which should be enforced in favor of the plaintiffs. If a trust, however, what is its character, and what will be the rights of the parties-if there is a trust? No doubt it is a well-settled rule in equity, as to continuing and subsisting trusts, that the statute of limitations does not apply to them. Kane v. Bloodgood, 7 Johns. Ch. 90. Our statute asserts the same rule. The code of 1853 provides (§ 6) that the title relating to the commencement of civil actions shall “ not apply in-the case of a continuing and subsisting trust.” 2 8. & C. 942 ; Rev. Stats., § 4974. But where the trustee denies the-right, lapse of time may constitute a bar. Other trusts, which might be the ground of an action at law, were not exempted from the operation of the statute.
The court will sometimes make use of the machinery of a trust to aid an injured party in obtaining property, the-title to which has been acquired by another by fraudulent means. The guilty party is sometimes called a trustee ex maleficio. Bispham’s Eq., § 91. Relief in such case is granted on the ground of fraud, and the statute of limitations will not be a bar where there is concealment. This is substantially in harmony with the provision of our statute, already quoted, that “ the cause of action in such case- *318 shall not be deemed to have accrued until the discovery of the fraud.”
There is no express allegation in this petition that the fraud was unknown to the plaintiff until within four years before this suit was brought. A petition may be sufficient without such allegation. Combs v. Watson, supra. But the fraud was distinctly averred in the answer and cross-petition of Carpenter, filed in the L’Hommedieu case in 1864, six years before this suit was brought, and the action of the district court in 1865, with respect to the fraud' alleged in that answer and cross-petition, is stated in this petition. It plainly appears, therefore, on the face of this petition, that when it was filed the plaintiffs had known of the existence of the alleged fraud for more than four years.
As to the allegations concerning the Goodin case (18 Ohio Bt. 169), it is sufficient to say that it appears in the petition that the plaintiffs were never parties, and that the suit has been dismissed.
Upon other important questions — as, for instance, the power of the canal company to mortgage its property, and the right of the railroad company to appropriate the property without proceedings against, or agreement with, the mortgagees — we do not deem it necessary to express any opinion.
Other parties are betore us in each of these records, but their rights are not materially different from those expressly considered in this report.
We are thus brought to the conclusion that the statutes afford a bar as to each of these cases. We reach the conclusión reluctantly; for, without knowing what might be the result of a trial or hearing of the questions sought to be made, the fact is the plaintiffs have been deprived of such trial and hearing. But the misfortune is attributable to the laches of the plaintiffs themselves. When cases are clearly brought within the provisions of the statutes limiting the time within which actions and proceedings may be commenced, we have no more power to refuse the due en *319 forcement of those provisions than we have to repeal them.

Judgment of dismissal and affirmance, as above.

Gilmore, C. J., and Boynton, J., dissented from the judgment.